John P. Makin, State Bar No. 88853
jmakin@gpsllp.com
Greenan, Peffer, Sallander & Lally LLP
6111 Bollinger Canyon Road, Suite 500
San Ramon, CA 94583
Telephone:   925.866.1000
Fax:              925.830.8787

David P.R. Symes, OSB No. 96135
david.symes@ogletreedeakins.com
  (Pro Hac Vice Admission Pending)
James M. Barrett, OSB No. 011991
james.barrett@ogletreedeakins.com
  (Pro Hac Vice Admission Pending)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
The KOIN Center
222 SW Columbia Street, Suite 1500
Portland, OR  97201
Telephone:   503.552.2140
Fax:              503.224.4518

Attorneys for Plaintiff
BLACKHAWK NETWORK, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

| | |
|---|---|
| BLACKHAWK NETWORK, INC., an Arizona corporation,<br><br>Plaintiff,<br><br>v.<br><br>GIFTANGO LLC, a Delaware limited liability company, and GIFTANGO CORPORATION, an Oregon corporation,<br><br>Defendants. | Case No. 4:13-cv-00874-SI<br><br>CORRECTED [P~~ROPOSED~~] TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE<br><br>Date: March 8, 2013<br>Time: 9:00 a.m.<br><br>Assigned to Hon. Susan Illson<br><br>Action filed:  February 26, 2013<br>Trial date:     None Set |

# [~~PROPOSED~~] TEMPORARY RESTRAINING ORDER

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure and Local Rule 65-1, Plaintiff's application for a temporary restraining order and an order to show cause why a preliminary injunction should not issue came before this Court for consideration on March 8, 2013. Upon consideration of the application, and for good cause shown:

IT IS HEREBY ORDERED as follows:

The Court finds that Plaintiff has demonstrated a substantial likelihood of success on the merits of its claims that Defendants are in breach and/or threatened breach of the Mutual Nondisclosure Agreement ("MNDA"), attached hereto as Appendix A. The Court further finds that Plaintiff has demonstrated that, without an order from this Court, it will suffer irreparable harm. Accordingly, the Court finds that a temporary restraining order and order to show cause why a preliminary injunction should not issue is in the public interest.

The Court orders the following relief:

1. Defendants and their affiliates and members are enjoined from disclosing plaintiff's Confidential Information, as that term is defined in paragraph 2 of the attached MNDA, to any person not authorized to receive that Confidential Information, including but not limited to Giftango, LLC's parent corporation, InComm Holdings, Inc.;

2. ~~Defendants and their affiliates are enjoined from continuing to possess plaintiff's Confidential Information that they received under the MNDA and are ordered to immediately return to plaintiff and/or destroy that Confidential Information and to provide written certification to plaintiff of such return and/or destruction;~~

3. No security is required in this matter; and

4. This Order and all supporting pleadings and papers shall be served upon Defendants by ___March 4___, 2013.

//

//

//

1
2
3
4
5
6
7
8
9
...
28

## ORDER TO SHOW CAUSE

Defendants and each of them are hereby ordered to appear before the Court at  9:00  o'clock AM / PM on  March 8 , 2013, to show cause why this order should not be extended until the conclusion of this litigation. Courtroom #10, 19th Fl., 450 Golden Gate Ave., San Francisco, CA 94102.

Dated:  3/4 , 2013.

By: _____Susan Illston_____
United States District Judge

Opposition to TRO due: 3/6/13 at noon.
Reply to TRO due: 3/7/13 at noon.

# APPENDIX A

MUTUAL NONDISCLOSURE AGREEMENT

THIS MUTUAL NONDISCLOSURE AGREEMENT ("this Agreement") is made and entered into as of November 21, 2011, between Blackhawk Network, Inc. ("Blackhawk") and Giftango Corporation, an Oregon corporation ("Company").

1. Purpose. The parties wish to explore a business opportunity of mutual interest and, in connection with this opportunity and the resulting business relationship, if any, each party may disclose to the other certain confidential technical and business information which the disclosing party ("Disclosing Party") desires the receiving party ("Receiving Party") to treat as confidential.

2. Confidential Information.

a. "Confidential Information" means any information disclosed by either party to the other party either directly or indirectly, in writing, orally, or by inspection of tangible objects (including without limitation documents, prototypes, samples, plant and equipment), whether or not designated as "Confidential", "Proprietary" or some similar designation, including without limitation the existence of this Agreement and the fact of discussions about this highly confidential business relationship; and also may include information disclosed to a Disclosing Party by third parties.

b. Confidential Information shall not, however, include any information which (i) was publicly known and made generally available in the public domain prior to the time of disclosure by the Disclosing Party; (ii) becomes publicly known and made generally available after disclosure by the Disclosing Party to the Receiving Party through no action or inaction of the Receiving Party; (iii) is already legally in the possession of the Receiving Party at the time of disclosure by the Disclosing Party as shown by the Receiving Party's files and records immediately prior to the time of disclosure; (iv) is obtained by the Receiving Party from a third party without a breach of such third party's obligations of confidentiality; or (v) is independently developed by the Receiving Party without use of or reference to the Disclosing Party's Confidential Information, as shown by documents and other competent evidence in the Receiving Party's possession.

3. Non-use and Non-disclosure.

a. Each party agrees not to use any Confidential Information of the other party for any purpose except (i) to evaluate and engage in discussions concerning a potential business relationship between the parties and, (ii) to the extent the parties enter into a business relationship, as provided in the definitive agreement executed in connection with such relationship. Each party agrees not to disclose any Confidential Information of the other party to third parties or to any of the Receiving Party's employees, except to those persons (including, parents, subsidiaries or affiliates), who are required to have the information for the permissible uses set forth above. Neither party shall reverse engineer, disassemble or decompile any prototypes, software or other tangible objects which embody the other party's Confidential Information and which are provided to the party hereunder.

b. In the event any Confidential Information is required to be disclosed by a party under the terms of a valid and effective subpoena or order issued by a court of competent jurisdiction, or by a demand or information request from an executive or administrative agency or other governmental authority, the party requested or required to disclose such Confidential Information shall, unless prohibited by the terms of a subpoena, order, or demand, promptly notify the other party of the existence, terms and circumstances surrounding such demand or request, shall consult with the other party on the advisability of taking legally available steps to resist or narrow such demand or request, and, if disclosure of such Confidential Information is required, shall exercise its reasonable best efforts to narrow the scope of disclosure and obtain an order or other reliable assurance that confidential treatment will be accorded to such Confidential Information. To the extent

the Receiving Party is prohibited from notifying the Disclosing Party of a subpoena, order or demand, by the terms of same, the Receiving Party shall exercise its reasonable efforts to narrow the scope of disclosure.

4. <u>Maintenance of Confidentiality.</u> Each party agrees that it shall take reasonable measures to protect the secrecy of and avoid disclosure and unauthorized use of the Confidential Information of the other party. Without limiting the foregoing, each party shall take at least those measures that it takes to protect its own most highly confidential information. Neither party shall make any copies of the Confidential Information of the other party unless the same are previously approved in writing by the other party. Each party shall reproduce the other party's proprietary rights notices on any such approved copies, in the same manner in which such notices were set forth in or on the original.

5. <u>No Obligation.</u> Nothing herein shall obligate either party to proceed with any transaction between them, and each party reserves the right, in its sole discretion, to terminate the discussions contemplated by this Agreement concerning the business opportunity.

6. <u>No Warranty.</u> ALL CONFIDENTIAL INFORMATION IS PROVIDED "AS IS". NEITHER PARTY MAKES ANY WARRANTIES, EXPRESS, IMPLIED OR OTHERWISE, REGARDING THE ACCURACY OR COMPLETENESS OF ITS CONFIDENTIAL INFORMATION.

7. <u>Return of Materials.</u> All documents and other tangible objects containing or representing Confidential Information of a Disclosing Party, and all copies thereof, which are in the possession of any Receiving Party, shall be and remain the property of the Disclosing Party and shall be promptly returned upon the expiration of the term of this Agreement or when otherwise requested by the Disclosing Party. Each Receiving Party shall return to the Disclosing Party all Confidential Information disclosed by the Disclosing Party pursuant hereto, in each case together with all copies, summaries and extracts thereof. All electronic copies (including data on computer hard drives, floppy disks, CD-roms, tapes, or other media) of Confidential Information of a Disclosing Party shall be and remain the property of such Disclosing Party and shall, upon written request of that Disclosing Party, be promptly returned to it or, at its sole option, destroyed. Upon return or destruction, the Receiving Party shall certify in writing that all such copies have been returned to such Disclosing Party or destroyed.

8. <u>No License.</u> Nothing in this Agreement is intended to grant any rights to either party under any patent, mask work right or copyright of the other party, nor shall this Agreement grant the Receiving Party any rights in or to the Confidential Information of the Disclosing Party except as expressly set forth herein.

9. <u>Term.</u> The obligations of each Receiving Party hereunder shall survive until such time as all Confidential Information of the Disclosing Party disclosed hereunder becomes publicly known and made generally available through no action or inaction of the Receiving Party.

10. <u>Remedies.</u> Each party agrees that any violation or threatened violation of this Agreement may cause irreparable injury to the other party, entitling the other party to seek injunctive relief in addition to all legal remedies.

11. <u>Conflict with Definitive Agreement.</u> To the extent that any terms contained in a definitive agreement entered into between the parties at or following the effective date hereof in connection with the establishment of a business relationship are inconsistent with any terms hereof, the terms of such definitive agreement shall control.

12. <u>Miscellaneous.</u> This Agreement shall bind and inure to the benefit of the parties hereto and their respective parents, subsidiaries, affiliates, successors and assigns. This Agreement shall be governed by the laws of the State of California, without reference to conflict of laws principles. This Agreement contains the entire agreement between the parties with respect to the subject matter hereof, and neither party shall have any obligation, express or implied by law, with respect to trade secret or proprietary information of the other party

except as set forth herein. The failure to enforce any provision of this Agreement shall not constitute a waiver thereof or of any other provision. This Agreement may not be amended, nor any obligation waived, except by a writing signed by both parties hereto.

| Blackhawk Network, Inc. | Giftango Corporation |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Name: TERI LEACH | Name: John Wager |
| Address: 5918 Stoneridge Mall Rd. | Address: 735 SW 20th Place, Suite 120 |
| Pleasanton, CA 94588 | Portland, Oregon 97205 |
| Title: CMO | Title: General Counsel |
| Phone: 925-226-9028 | Phone: (877) 443-8264 |
| Fax: 925-226-9083 | Fax: (877) 443-2198 |

# Addendum to
# Mutual Non-Disclosure Agreement

This Addendum amends the Mutual Non-Disclosure Agreement with an Effective Date of November 21, 2011 (the "*Agreement*") between Blackhawk Network, Inc., ("Blackhawk") and Giftango Corporation, an Oregon corporation, ("Giftango"). This Addendum shall be effective on the 25th of September 2012 (the "*Addendum Date*").

The parties agree as follows:

**The Purpose of the Agreement shall be modified to include discussions concerning a possible strategic transaction and Confidential Information will be modified to include any trade secrets, knowledge, data or any proprietary or confidential information related to such transaction.**

**IN WITNESS WHEREOF**, the parties hereto have caused this Addendum to be signed by duly authorized officers or representatives as of the Addendum Date.

| GIFTANGO CORPORATION | BLACKHAWK NETWORK, INC. |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Name: David Nelson | Name: William Tauscher |
| Title: CEO | Title: CEO |
| Date: 9/27/12 | Date: 9/27/12 |