IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLACKHAWK NETWORK, INC.,<br><br>    Plaintiff,<br><br>   v.<br><br>GIFTANGO LLC and GIFTANGO CORPORATION,<br><br>    Defendants. | No. C 13-00874 SI<br><br>**ORDER DISSOLVING TEMPORARY RESTRAINING ORDER; DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

On March 1, 2013, plaintiff Blackhawk Network, Inc. filed an *ex parte* application for a temporary restraining order and order to show cause regarding a preliminary injunction. On March 4, 2013, the Court granted the temporary restraining order in part, and directed briefing on the order to show cause. Defendants Giftango Corp. and Giftango LLC (collectively "Giftango") have filed an opposition to which plaintiff has replied. The Court held a hearing on the matter on March 8, 2013. Having considered the parties' arguments and for good cause shown, the Court hereby DENIES plaintiff's motion for a preliminary injunction and DISSOLVES the temporary restraining order currently in place for the reasons set forth below.

**BACKGROUND**

Plaintiff Blackhawk is in the prepaid services industry. Attinger Decl. ¶ 3. It distributes pre-paid gift cards on behalf of other retailers for sale in "brick and mortar" retail locations and online. *Id.* Defendant Giftango Corp. is an Oregon corporation that also purportedly distributed gift cards, but only online, and it did not offer physical cards. *Id.* ¶ 4, 5. Beginning in September 2011, Giftango Corp. and Blackhawk began talks to form some new business relationship. *Id.* ¶ 7. To facilitate those talks, the parties entered into a Mutual Nondisclosure Agreement ("MDNA") on November 21, 2011, and

amended it on September 25, 2012. Compl. ¶ 7; Attinger Decl. ¶ 9. The MDNA governs the parties' use of confidential information. Compl. Ex. A, B. However, the parties were unable to come to terms regarding Blackhawk's acquisition of Giftango Corp. and the talks fell apart sometime in the fall of 2012.

On or around December 28, 2012, Giftango Corp. was acquired by InComm Holdings, Inc., an Atlanta-based direct competitor of Blackhawk. Defendant Giftango LLC is the recently formed Delaware successor to Giftango Corp., created as a result of the acquisition by InComm. Thus, in Blackhawk's view, Giftango LLC is now also a direct competitor.

Shortly after the acquisition, Giftango LLC initiated two lawsuits against three employees who were attempting to leave and join Blackhawk. *See Giftango, LLC v. Rosenberg, et al.*, Case No. 3:13-cv-00031-AC (D. Ore., Jan. 8, 2013); *Giftango LLC v. Blackhawk Network California, Inc., et al.*, Case No. 3:13-cv-00057-AC (D. Ore., Jan. 8, 2013).[1] These lawsuits came about after Giftango discovered that these employees had allegedly conspired with Blackhawk to steal confidential information. Def. Opp. at 2. One employee, Jennifer Philo, filed a lawsuit against Giftango LLC seeking a preliminary injunction against enforcement of her non-compete and non-solicitation covenants with Giftango LLC. *See Philo v. Giftango, LLC*, Case No. 13-CV-0094–JM-B.M. (S.D. Cal., Jan. 14, 2013).

Against this already litigious backdrop, on January 14, 2013, Blackhawk invoked its rights under the ¶ 7 of the MDNA, which provides:

> All documents and other tangible objects containing or representing Confidential Information of a Disclosing Party, and all copies thereof, which are in the possession of any Receiving Party, shall be and remain the property of the Disclosing Party and shall be promptly returned upon the expiration of the term of this Agreement or when otherwise requested by the Disclosing Party. Each Receiving Party shall return to the Disclosing Party all Confidential Information disclosed by the Disclosing Party pursuant hereto, in each case together with all copies, summaries and extracts thereof. All electronic copies (including data on computer hard drives, floppy disks, CD-ROMS, tapes, or other media) of Confidential Information of a Disclosing Party shall be and remain the property of such Disclosing Party and shall, upon written request of that Disclosing Party, be promptly returned to it or, at its sole option, destroyed. Upon return

---

[1] The Court hereby takes judicial notice of the Oregon and California legal proceedings discussed herein.

2

> or destruction, the Receiving Party shall certify in writing that all such copies have been returned to such Disclosing Party or destroyed.

Symes Decl., Ex. 3; Compl., Ex. A. In particular, Blackhawk's letter to Giftango Corp.'s general counsel requested the return or destruction of its confidential information, written certification that all copies had been returned and that no Blackhawk confidential information had been or will be shared, and a log of all items destroyed. Compl. ¶ 10. On January 18, 2013, Giftango LLC's general counsel responded that the confidential information at issue was subject to litigation holds required by the various federal lawsuits. Symes Decl., Ex. 4. Although the litigation holds required preservation of the information, "[rest assured, however, that Giftango will continue to abide by the restrictions on disclosure and use in the MDNA . . . and when released by the court, shall comply with the terms of the MDNA regarding return or destruction of any such materials in our possession." *Id.* In Blackhawk's view, Giftango's response amounted to refusal to comply with the MDNA. Compl. ¶ 11.

In reply, on February 12, 2013, Blackhawk proposed that it "engage a neutral third-party who would receive Blackhawk's . . . Confidential Information from Giftango and preserve that information until further notice." Symes Decl., Ex. 5. Blackhawk also noted that there was no litigation hold exception to the MDNA and further asserted that Giftango's "failure to provide the requested assurances [is] a tacit admission that Giftango has already shared Blackhawk Confidential Information" with others. *Id.* In response, on February 15, 2013, Giftango agreed to the third-party proposal and suggested that Streamline Imaging, LLC be the third-party neutral and that Blackhawk also return Giftango's confidential information to Streamline. *Id.*, Ex. 6. Giftango also noted that Blackhawk's assertion that Giftango had "tacitly admitted" that Giftango had breached the MDNA was "unsubstantiated and unwarranted" and that Giftango was aware of no instance of transfer or disclosure of Blackhawk information to InComm. *Id.* Giftango also noted that it was "identifying the precise locations where all of this information may exist, which is a time-consuming task." *Id.*

Unsatisfied, on February 18, 2013, Blackhawk replied that it was "deeply troubled by this seemingly cavalier approach to locating and protecting [Blackhawk's] confidential information." Symes Decl., Ex. 7. In Blackhawk's view, given Giftango's continuing obligation to protect confidential

information, Giftango's statement that it required time to identify the location of Blackhawk's information *must have meant* that Giftango had lost the information. *Id.* Blackhawk also asserted – in the face of Giftango's now repeated assurances that it was abiding by the MDNA, notwithstanding the relevant litigation holds – that Giftango had failed "to provide real assurances" and had improperly refused to return or destroy the information at issue. *Id.* However, Blackhawk agreed to the use of Streamline as a neutral repository for the return of both parties' information, and proposed additional conditions. *Id.*

Increasingly frustrated with Blackhawk's aggressive statements, Giftango responded that Blackhawk's February 18, 2013 letter was "once again rife with unsupported accusations and misstatements." *Id.* Ex. 8. Giftango again stated that Blackhawk's confidential information "was (and still is) stored, under controlled access, with Giftango." *Id.* Moreover, Giftango stated that with respect to Blackhawk's demands for assurances, Giftango "has been, and continues to be" in compliance with the MDNA. *Id.* Giftango noted that Streamline had agreed to act as a repository and to assist Giftango in locating and deleting Blackhawk's information. *Id.* It assured Blackhawk that it was "making substantial progress" and that "any assurances Giftango can give you today regarding access to [Blackhawk] information must, of course, start with a comprehensive and careful review of the status and history of the information, which is precisely what we told you Giftango is doing." *Id.*

Blackhawk replied on February 25, 2013, variously accusing Giftango of being "hypocritical" and of "making shrill accusations" and "unsatisfactory excuses" for the month-long delay in returning Blackhawk's confidential information. *Id.* Ex. 9. Amidst this series of insults, Blackhawk agreed to allow Streamline to assist in the location of Blackhawk's confidential information on Giftango's servers, and to begin the process of deleting Giftango's confidential information on Blackhawk's servers. *Id.*

The very next day Blackhawk filed this complaint for declaratory relief, breach of contract, and breach of the covenant of good faith and fair dealing. Three days later, on March 1, 2013, Blackhawk filed an *ex parte* application for a temporary restraining order enjoining Giftango from disclosing Blackhawk's confidential information to unauthorized persons, and directing Giftango to return or

4

destroy that information. In order to preserve the status quo until the Court could hold a hearing on the matter, on March 4, 2013, the Court granted the TO application, in part, so as to enjoin Giftango from disclosing Blackhawk's information prior to the hearing. Sensitive to the litigation hold issue identified Blackhawk's application, the Court denied the TO as to requiring Giftango to affirmatively destroy or return any information. Having granted the TO in part, the Court now considers whether to dissolve it, as Giftango has requested, or covert it to a preliminary injunction as Blackhawk has requested.

## LEGAL STANDARD

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). A preliminary injunction is an extraordinary remedy never awarded as of right. *Id.* at 24 (citing *Manuf. v. Green*, 553 U.S. 674, 689-690, (2008)). In each case, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. at 24 (citing *Amoco Production Co. v. Village of Gamble, AK*, 480 U.S. 531, 542 (1987)).

## DISCUSSION

**1.    Dissolution of the TO.**

Dissolving a temporary restraining order is within the sound discretion of the district court. *Owen v. Perkins Oil Well Cementing Co.*, 2 F.2d 247, 247 (9th Cir. 1924). In effect, Blackhawk has asked this Court to prohibit Giftango from doing what Giftango is apparently already *not* doing – sharing Blackhawk's information with unauthorized parties. In Blackhawk's moving papers, and in Giftango's opposition, the Court finds substantial evidence of Giftango's repeated assurances that it has not and will not share Blackhawk's information in violation of the MDNA. *See, e.g.*, Symes Decl., E's. 4, 6, 8 (letters from Giftango to Blackhawk repeatedly assuring Blackhawk that Giftango is in

compliance with the MDNA); Northrop Decl. ¶ 9 (Streamline's founding partner attesting to the fact that Blackhawk's information is secure); Nelson Decl. ¶¶ 10-12 (Giftango has maintained Blackhawk's confidential information in the same secure manner as it has its own MDNA confidential information). The Court issued the March 4, 2013 TO on the basis that exigency required that no information be shared prior to the date on which the Court could hear argument on the matter, March 8, 2013. At the hearing Blackhawk argued that the Court must continue the TO in order to compel Giftango's continued compliance with the MDNA. As discussed further below, there is no evidence the Giftango has violated the MDNA, or proposes to. Giftango's compliance predates the TO and there is no evidence that, in absence of the TO, Giftango will suddenly reverse course and violate the agreement. Having heard argument and given the evidence submitted herein, the Court concludes that there remains no basis for continuing the temporary restraining order prohibiting unauthorized disclosure. Accordingly, the Court hereby DISSOLVES the temporary restraining order.

**2.     Preliminary Injunction.**

Having dissolved the TO with respect to unauthorized disclosure, the Court now turns to Blackhawk's request for a preliminary injunction enjoining both unauthorized disclosure and requiring return or destruction of Blackhawk's confidential information.

    **a.     Likelihood of Success on the Merits**

The crux of Blackhawk's claims for breach of contract and breach of the covenant of good faith and fair dealing is that: (1) Giftango failed to return or destroy the information; (2) failed to protect the information; and (3) failed to provide assurances that the information was destroyed or protected. Upon careful review of the facts, not only does the evidence reveal that Blackhawk is unlikely to succeed on the merits, it shows that there is not even a "serious question" going to the merits. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011). Instead, this lawsuit appears to be a grudge match between former allies and their acrimonious lawyers after the deterioration of negotiations.

First, as Giftango notes, there are three other lawsuits pending in Oregon and California federal courts that revolve around the relationship between Giftango and Blackhawk and the confidential information they exchanged while they considered merger or acquisition. Although the MDNA ordinarily would require destruction or return of this information, California law excuses performance where "such performance . . . is prevented . . . by the operation of law." Cal. Civ. Code § 1511. On this point federal law is clear, "[as soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action." *In re Tapster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1067 (N.D. Cal 2006). The parties do not dispute that all three actions involve allegations of a conspiracy between Blackhawk and former Giftango employees to misuse Giftango's confidential information. Thus, performance here is excused by operation of federal document retention law.

Given this, the parties agreed to a substitute performance, short of return or destruction, to invest a third party repository with the information during the pendency of these litigations. *See Durgan v. Kaplan*, 68 Cal.2d 81, 91 (1968) (a party that agreed to accept a "substitute to the performance promised" is charged with acceptance of that performance). All evidence submitted to the Court shows that Giftango has performed or is performing consistent with the parties' agreement. *See, e.g.*, Symes Decl., E's. 6-9 (correspondence evidencing the parties' agreement and performance of the Streamline repository alternative); Northrop Decl. ¶ 9 (Streamline's founding partner attesting to the parties' efforts); Nelson Decl. ¶¶ 12, 14. Accordingly, the Court finds that Blackhawk is unlikely to succeed on the merits with respect to its first theory that Giftango breached the MDNA by failing to return or destroy the information at issue.

Blackhawk similarly has not shown that it is likely to succeed on its claim that Giftango breached the MDNA by failing to adequately protect Blackhawk's information from unauthorized disclosure. The MDNA requires that "each party shall take at least those measures that it takes to protect its own most highly confidential information." Compl. Ex. 1. Blackhawk's information was held just as Giftango holds its own highly confidential information – secured on password protected

computers in business premises that have restricted access, accessible only to employees who have signed restrictive covenants expressly forbidding use or disclosure of the information outside Giftango. Nelson Decl. ¶ 12. There is no evidence that Giftango actually disclosed the information to unauthorized persons and the Court has no reason to believe that Giftango's security measures were inadequate or violative of the MDNA.

Finally, there is no evidence that Giftango failed to provide assurances that the information was destroyed or protected. First, as discussed above, Giftango could not legally destroy or return the information due to the various litigation holds. Second, as discussed above, Giftango has <u>four times</u> provided assurances that Blackhawk's information has not been disclosed in violation of the MDNA. *See*, Symes Decl., E's. 4, 6, 8; Nelson Decl. ¶ 12 ("None of the information received from Blackhawk was disseminated outside of Giftango, and, specifically, was never shared with InComm."). Blackhawk's primary complaint, as articulated in its reply brief, appears to be that Giftango has not acted swiftly enough in providing the requested assurances throughout the parties' two-month negotiation over the confidential information. Rep. at 2-3. Again, the evidence shows that the parties were actively engaged in negotiating the terms of the repository arrangement and that Giftango repeatedly provided the requested assurances, not just in response to this litigation as Blackhawk suggests (Rep. at 2-3), but throughout this period. As Giftango has noted repeatedly, the process of searching its servers to locate the relevant information and eventually turn it over to a third party is not instant; it takes considerable time and effort. *See* Symes Decl., Ex. 8. Moreover, if there was any unusual delay, it appears to have been on Blackhawk's part. Giftango wrote to Blackhawk on January 18, 2013, reminding Blackhawk that litigation holds prevented it from complying immediately with Blackhawk's request. Symes Decl., Ex. 4. Blackhawk did not respond until nearly four weeks later, on February 12, 2013. Symes Decl., Ex. 5. Thus, not only does Blackhawk's assertion that Giftango's efforts were "eleventh-hour" appear disingenuous, it also confirms that it is highly unlikely that

Blackhawk will succeed on its claim that Giftango's behavior amounts to a breach of contract or of the covenant of good faith and fair dealing.[2]

### b. Remaining injunctive factors.

Having found substantial deficiencies in Blackhawk's case on the merits, the Court need not pause long on the remaining injunctive relief factors for they, too, counsel in favor of denying Blackhawk's proposed injunction. Given that Blackhawk has failed to show evidence of any likelihood that Giftango has or will share its confidential information or will continue to possess it in violation of the MDNA, there is no evidence that Blackhawk will suffer irreparable harm, or *any* harm for that matter. Next, balancing the equities also favors denial of the injunction: on the one hand, Blackhawk will suffer no harm in absence of an injunction, while on the other, Giftango will become embroiled in yet more litigation on this issue. For the same reason, the public interest does not favor issuance of an injunction.

### CONCLUSION

For the foregoing reasons, and for good cause shown, the Court DISSOLVES the temporary restraining order and DENIES plaintiffs' motion for a preliminary injunction.

**IT IS SO ORDERED.**

Dated: March 11 , 2013

SUSAN ILLSTON
United States District Judge

---

[2] The Court is equally unpersuaded by Blackhawk's claim that Giftango has breached the MDNA because it has admittedly been unable to obtain Blackhawk's confidential information from *one* Giftango employee. Nelson Decl. ¶ 14. As Giftango notes, that particular employee is out of the country and Giftango will not have access to his laptop until he returns. *Id.* Accordingly, there can be no breach where Giftango is in the process of performing its duties under the contract.

9